Filed 4/22/26  McCoy v. Fleetwood Aluminum Products CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| MARK MCCOY, | D087164 |
| Plaintiff and Respondent, |  |
| v. | (Super. Ct. No. CVRI2400738) |
| FLEETWOOD ALUMINUM PRODUCTS, INC., et al., |  |
| Defendants and Appellants. |  |

APPEAL from an order of the Superior Court of Riverside County, Dennis W. Hayashi, Judge.  (Retired Judge of the Alameda Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed in part, affirmed in part.  Requests for judicial notice denied.

Greenberg Traurig, Gregory A. Nylen and Karin L. Bohmholdt, for Defendants and Appellants Fleetwood Aluminum Products, Inc.; Fleetwood Aluminum Products, LLC; and Masonite Corporation.

Raines Feldman Littrell, Laith D. Mosely and Joshua C. Williams, for Defendants and Appellants Janice McCoy, Mica Gumbleton, Mara McCoy Cartier, and Michele Davis.

Godes & Preis, Joseph M. Preis and Oliver B. Dreger, for Plaintiff and Respondent.

Mark McCoy used to work at Fleetwood Aluminum Products, Inc. (Fleetwood), during which time he signed an arbitration agreement (Agreement) with Fleetwood.  After his employment was terminated, he remained a shareholder in Fleetwood, a family-owned business.  Fleetwood later contributed many—but not all—of its assets and liabilities to wholly owned subsidiary Fleetwood Aluminum Products, LLC (the LLC) and then sold its equity in the LLC to Masonite Corporation.  Citing his ownership interest in Fleetwood, McCoy sued Fleetwood, the LLC, Masonite, and Fleetwood directors Janice McCoy, Mica Gumbleton, Mara McCoy Cartier, and Michele Davis (collectively, the Directors) based on the allegedly fraudulent nature of the transfer to Masonite.  All defendants petitioned to compel arbitration, which the trial court denied.  All defendants appeal.

We conclude the trial court should have compelled arbitration of McCoy's claims against Fleetwood.  Our decision interpreting the Agreement's delegation language in another lawsuit between McCoy and Fleetwood controls under the doctrine of issue preclusion.  And we perceive no intentional relinquishment of Fleetwood's right to enforce arbitration as to only it based on Fleetwood filing a joint petition to compel arbitration with the LLC and Masonite.  Without more, we will not impose waiver.

Under the Agreement's delegation language, McCoy's claims against the Directors must also proceed to arbitration.  McCoy expressly agreed to delegate to the arbitrator all threshold questions of arbitrability of claims defined to encompass "any claim" he may have against Fleetwood's directors.  As a result, the arbitrator must determine if the Directors have standing to

2

enforce the Agreement as nonsignatories and whether the claims asserted fall within the scope of the Agreement.

As to the LLC and Masonite, denying the petition to compel arbitration was proper. The Agreement contains no clear and unmistakable delegation of McCoy's claims against the LLC and Masonite, so they must establish standing to enforce the Agreement in court before proceeding to arbitration. They have not. The LLC and Masonite's claim to third-party beneficiary status is predicated on, and thus fails for, the same reason as their arguments about the delegation clause. And nothing in the record indicates the LLC or Masonite assumed any rights or obligations related to former Fleetwood employees like McCoy, so they are not Fleetwood's successors in interest to the Agreement. To the contrary, the transaction documents show the LLC and Masonite expressly avoided assuming any liabilities arising from other litigation involving McCoy, which indicates the corresponding right to enforce the Agreement likewise did not pass to them. Finally, equitable estoppel does not demand McCoy arbitrate his claims against the LLC and Masonite, as we are not persuaded those claims are inextricably intertwined with any contractual obligations stemming from McCoy's Agreement-related employment.

We therefore reverse in part and affirm in part.

## I.

## A.

Fleetwood is a family-owned business based in California that holds itself out as an industry leader in the manufacture of custom, high-end aluminum windows and doors.

In 2018, when he was Fleetwood's chief operating officer, its general manager, and a director, McCoy signed the Agreement with Fleetwood. The

3

Agreement is titled "California Employee Arbitration Agreement" and states it was "in consideration of [McCoy's] employment and/or continued employment."

Under the Agreement, McCoy agreed to arbitrate "any claim" he may have against Fleetwood "or its owners, directors, officers, managers, employees, agents, and parties affiliated with [Fleetwood's] employee benefit and health plans (together, 'Affiliated Persons') or [Fleetwood] or such Affiliated Persons may have against" him, except for a set of excluded claims identified in another paragraph. The Agreement defines arbitrable "Claims" to be "any claims that arise between [McCoy] and [Fleetwood] or any Affiliated Person" aside from those expressly excluded.

The Agreement "shall survive termination of the employment relationship and shall apply to all Claims, other than as specified in [the] paragraph [detailing exceptions], regardless of whether they arise or are asserted during employment or after termination of employment."

The Agreement selects California law to govern "interpretation, construction[,] and performance of this Agreement . . . , except that questions concerning the enforceability of this Agreement shall be decided by the arbitrator pursuant to the Federal Arbitration Act."

### B.

By 2022, McCoy was Fleetwood's chief executive officer and president, as well as a director and owner of just over 12 percent of the company's shares of stock. In early 2022, the Directors purportedly removed McCoy as a director and Fleetwood terminated his employment. McCoy considers the attempt to remove him as a director improper and his termination unlawful. Litigation followed.

4

In what we will call the employment case, McCoy sued Fleetwood and the Directors for individual and derivative causes of action related to his terminated employment and removal from the board of directors.

In what we will call the records case, McCoy sued Fleetwood for allegedly depriving him access to corporate records he sought as a Fleetwood director and shareholder. The trial court denied Fleetwood's petition to compel the records case to arbitration. During the pendency of this appeal, we reversed that order in an unpublished opinion. (*McCoy v. Fleetwood Aluminum Products, Inc.* (July 31, 2025, D084305) [nonpub. opn.] (*Records Appeal*).) We deny Fleetwood, the LLC, and Masonite's motion for judicial notice of the *Records Appeal* as unnecessary because we may cite to that unpublished opinion given the parties argue it has issue preclusive effect here. (Cal. Rules of Court, rule 8.1115(b); *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 [issue preclusion was "historically called collateral estoppel"].)

C.

In October 2023, Fleetwood contributed some—but not all—of its assets and liabilities to the LLC to facilitate a sale to Masonite. Fleetwood then sold its equity in the LLC to Masonite.

Those transactions prompted the litigation underlying this appeal. McCoy sued Fleetwood, the LLC, Masonite, and the Directors. Against all defendants, McCoy brings claims for fraudulent transfer and accounting for allegedly transferring Fleetwood's assets to Masonite without his consent "with the intent to hinder, delay, or defraud" McCoy "to make it more difficult for him to collect 12.195 percent of the value of Fleetwood" at the time of the sale "and/or to collect the recovery entitled to him through" the ongoing employment and records cases. Against Fleetwood, McCoy also asserts a

5

claim under Corporations Code section 1601 for access to corporate records "for a purpose reasonably related to his interests as a shareholder."

Defendants petitioned to compel arbitration. In their petition, the Directors argued, among other things, that all arbitrability issues were for the arbitrator to decide and they could enforce the Agreement as third-party beneficiaries. Fleetwood, the LLC, and Masonite filed a joint petition in which they argued, among other things, that the Agreement delegates all questions of arbitrability to the arbitrator and nonsignatories Masonite and the LLC have standing to compel arbitration.

The trial court denied both petitions. The court found the Agreement's terms "evidence[] [McCoy's] intent to arbitrate arbitrability with Fleetwood and no one else." Even so, the court concluded Fleetwood—by moving collectively with nonsignatories Masonite and the LLC—waived having the arbitrator "decide arbitrability of the claims against Fleetwood only." It then determined the Agreement, despite being "broadly written," applies only to employment claims and not to the claims asserted in this matter.

II.

"Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) "'Our de novo review includes the legal determination whether and to what extent nonsignatories to an arbitration agreement can enforce the arbitration clause.'" (*Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 8.)

6

A.

1.

Fleetwood argues the trial court erred by not enforcing the delegation clause and our decision in the *Records Appeal* controls on that point under the doctrine of issue preclusion. We agree as to the claims against Fleetwood.

Under both federal and state law, who decides threshold questions of arbitrability—the arbitrator or the court—"is a matter of party agreement." (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 243.) We conduct that inquiry, "at least initially, through the prism of state law." (*Id.* at p. 244.) To overcome the default presumption that such questions are for the court to decide, a delegation clause must (1) be "'clear and unmistakable'" and (2) "'not be revocable under state contract defenses.'" (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 892.) McCoy does not assert any contract defense to the delegation clause, so we focus on the clear and unmistakable requirement.

The Agreement specifies that arbitrable Claims include "any dispute arising out of or relating to the interpretation or application of this Agreement," and McCoy expressly agreed to "delegate authority to decide those issues solely to the arbitrator." The Agreement later states, "[t]he arbitrator alone and not a court shall have jurisdiction to decide [the arbitrator's] jurisdiction, any questions as to the arbitrability of Claims, whether an agreement to arbitrate exists and is valid, and whether the agreement to arbitrate covers the dispute in question."

Analyzing this same Agreement in the *Records Appeal*, we concluded "this language establishes [McCoy and Fleetwood's] clear and unmistakable intent to send to the arbitrator all questions of arbitrability, as it is materially identical to delegation language other courts have determined

7

establish this intent." (*Records Appeal*, D084305, citing *Aanderud*, 13 Cal.App.5th at p. 892; *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560; *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 242.)

Issue preclusion "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*DKN Holdings*, 61 Cal.4th at p. 824.) It applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.) Neither party disputes the first or fourth requirement, so we focus on whether an identical issue was actually litigated and necessarily decided in the *Records Appeal*.

Fleetwood, the LLC, and Masonite argue issue preclusion means the *Records Appeal* "controls the outcome here" because both cases "concern the interpretation of the same Arbitration Agreement and the same delegation clauses, against the same [p]laintiff." In his supplemental brief, McCoy concedes the *Records Appeal* actually decided the Agreement contains a clear and unmistakable agreement to delegate threshold questions of arbitrability as to disputes between McCoy and Fleetwood. The concession is well taken, and we thus conclude the *Records Appeal* is dispositive of the delegation clause issue as to McCoy's claims against Fleetwood, subject to the discussion of waiver covered in the next section.

But McCoy argues this issue is "party-specific." (Italics omitted.) According to him, whether he agreed to delegate disputes between him and nonsignatories the LLC or Masonite was neither litigated nor necessarily decided in the *Records Appeal*. We agree. In the *Records Appeal*, we did not decide if the delegation clause was limited to disputes between McCoy and Fleetwood or if McCoy clearly and unmistakably agreed to delegate

8

arbitrability issues between him and the LLC or Masonite. Consequently, issue preclusion does not extend to the LLC or Masonite. Nor to the Directors, but they do not argue otherwise.

2.

Fleetwood's last hurdle to enforcing the delegation clause is the trial court's determination that it waived having the arbitrator "decide arbitrability of the claims against Fleetwood only" by petitioning to compel arbitration jointly with the LLC and Masonite. We conclude Fleetwood did not waive its right to enforce the delegation clause as to it.

Under both state and federal law, waiver requires the intentional relinquishment or abandonment of a known right. (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 584; *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 417.)

To start, Fleetwood contends McCoy forfeited this waiver argument by not asserting it before the trial court. But because Fleetwood does not cite any authority precluding a trial court from raising waiver on its own, as happened here, we elect to decide the issue on the merits.

Fleetwood argues a party "does not waive [its] contractual right to delegation or arbitration by filing a motion seeking to enforce that right" and points out that its trial court reply brief stated the court "may still compel arbitration as to Fleetwood" even if it determined the Agreement did not apply to the LLC or Masonite. McCoy counters that Fleetwood did not mention compelling arbitration as to only it until the trial court reply brief, and "specifically declining to seek separate relief on this question" in the opening papers was a voluntary act constituting waiver. McCoy does not cite any case, and we are aware of none, imposing waiver based on a joint filing with other parties and nothing more.

9

We do not perceive Fleetwood's joint filing as an intentional relinquishment of the right to enforce the delegation clause as to it only. The joint petition to compel arbitration contains no all-or-nothing language indicating Fleetwood intended for its right to enforce delegation to rise or fall with the LLC and Masonite. And the reply brief's reference to compelling arbitration as to Fleetwood only, though not in the opening papers, cuts against the idea that Fleetwood intentionally relinquished or abandoned this right. Our Supreme Court has clarified that a party's failure to raise an objection in the required manner, "without more," does not constitute a waiver. (*North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 178.) It seems to follow that, in this context, Fleetwood's failure to expressly state in its petition that it sought to enforce the delegation clause regardless of the petition's outcome as to the LLC or Masonite, without more, cannot constitute a waiver.

Because McCoy and Fleetwood clearly and unmistakably agreed arbitrability disputes between them would be delegated to the arbitrator and Fleetwood did not waive its right to enforce the delegation clause, we reverse the denial of the petition to compel arbitration as to the claims against Fleetwood.

B.

Fleetwood and McCoy are the only parties to the Agreement; the Directors seek to compel arbitration under the Agreement as third-party beneficiaries. Whether the Directors are third-party beneficiaries of the Agreement is a threshold question of arbitrability, so we must first determine *who* has authority to decide it. (*Mahram v. The Kroger Co.* (2024) 104 Cal.App.5th 303, 309.) The Directors contend the arbitrator must decide the arbitrability of McCoy's claims as to them. We agree.

The Directors argue the Agreement's delegation provision is broad, as it gives the arbitrator the sole jurisdiction to decide "any questions as to the arbitrability of Claims." The term Claims specifically encompasses "any claims that arise between [McCoy] and [Fleetwood] *or any Affiliated Person*," which in turn expressly includes Fleetwood's "directors." (Italics added.) And the authority to decide issues about "the interpretation or application of this Agreement" are "delegate[d] . . . solely to the arbitrator." As a result, the Directors argue any claims between McCoy and them "are subject to the delegation provision."

McCoy, on the other hand, contends that "at best he was agreeing to arbitrate the issue of arbitrability to some set of claims *with Fleetwood, and with Fleetwood alone*," because he reads the Agreement to "expressly limit[]" the delegation clause to him and Fleetwood. In support, McCoy points to how the Agreement "repeatedly refers to the subject parties" as him and Fleetwood only, including the provision stating, "*the Parties* delegate authority to decide those issues solely to the arbitrator." (Italics added.) Because "'the delegation clause must be viewed as a separate agreement nested within the arbitration agreement'" (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 768), McCoy claims it must be analyzed separately from the overall Agreement, so he asks us to disregard where the Agreement defines the term Affiliated Person to include the Directors. But as the Directors note, if we were to ignore how terms are defined elsewhere in the Agreement, we could not confirm "you," the "Company," and the "Parties" meant McCoy and Fleetwood. So while we agree that what the parties agreed to delegate depends on the delegation-related language in the Agreement, we must still look to the entire Agreement to understand and interpret that language. (Civ. Code, § 1641.)

11

In doing so, we conclude McCoy clearly and unmistakably agreed to delegate to the arbitrator any arbitrability issues related to his claims against the Directors. As a result, the arbitrator must decide if the Directors are third-party beneficiaries with standing to enforce the Agreement and whether McCoy's claims against them fall within the Agreement's scope.

*Kramer v. Toyota Motor Corp.* (9th Cir. 2013) 705 F.3d 1122, on which the trial court and McCoy rely, is distinguishable. In *Kramer*, the plaintiffs bought vehicles from dealerships, at which time they entered into purchase agreements containing arbitration provisions. (*Id.* at p. 1124.) The arbitration provisions covered "any dispute between [the plaintiffs] and [the dealership]" and "any claim [the plaintiffs] may have against [the dealership]." (*Ibid.*, capitalization omitted.) When the plaintiffs later sued the manufacturer—not the dealerships—the manufacturer sought to compel arbitration under the arbitration provisions and argued questions of arbitrability were delegated to the arbitrator. (*Id.* at p. 1126.) *Kramer* disagreed because the terms of the arbitration provisions were "expressly limited" to the plaintiffs and the dealerships; in other words, the arbitrator had authority to decide only disputes as between the plaintiffs and the dealerships. (*Id.* at p. 1127.) "Given the absence of clear and unmistakable evidence that [the p]laintiffs agreed to arbitrate arbitrability with nonsignatories," the trial court "had the authority to decide whether the instant dispute [wa]s arbitrable." (*Ibid.*)

Here, in contrast, McCoy agreed to delegate "any questions as to the arbitrability of Claims," a term defined to cover not just claims between McCoy and Fleetwood but also claims between McCoy and the Directors as Affiliated Persons. McCoy thus clearly and unmistakably agreed to delegate arbitrability of the claims he has asserted against the Directors in this

matter, so we reverse the denial of the Directors' petition to compel arbitration. Because we reverse on this basis, we do not need to reach the parties' other arguments about arbitrating claims between McCoy and the Directors. We therefore deny the Directors' motion for judicial notice of the American Arbitration Association's Employment Arbitration Rules as unnecessary to our disposition. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.)

## C.

### 1.

The LLC and Masonite, nonsignatories to the Agreement, contend the delegation clause also applies to McCoy's claims against them. We disagree.

The LLC and Masonite claim that "[w]here a valid delegation clause exists, the question of whether a nonsignatory has standing to enforce an arbitration agreement is delegated to the arbitrator unless there is clear language limiting enforceability to the signatories alone." (Citing *Sauer v. Experian Information Solutions, Inc.* (C.D.Cal., May 12, 2022, No. 8:21-cv-00963-JLS-DFM) 2022 U.S. Dist. LEXIS 109086, at p. *3; *Worldwide Film Productions, LLC v. JPMorgan Chase Bank, N.A.* (C.D.Cal., Mar. 13, 2020, No. CV 19-10337-DSF (JPRx)) 2020 U.S. Dist. LEXIS 92837, at p. *3.) Neither case they cite stands for this proposition, which would flip the default presumption under state and federal law "that the parties intend courts, not arbitrators, to decide disputes about arbitrability." (*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 603 [cleaned up].) We thus reiterate that a court will not enforce a delegation clause absent clear and unmistakable evidence the parties intended such delegation. (*Id.* at p. 603.) As a result, the LLC and Masonite must show McCoy clearly and unmistakably intended the arbitrator to decide arbitrability of disputes between them and him.

13

The LLC and Masonite emphasize the broad language of the delegation clause and how it "includes 'Affiliated P[erson]s.'" The Agreement defines Affiliated Persons as Fleetwood's "owners, directors, officers, managers, employees, agents, and parties affiliated with [Fleetwood's] employee benefit and health plans." The LLC and Masonite try to fit themselves into this definition by saying they have "an ownership interest in" or are otherwise "affiliated with Fleetwood." The LLC and Masonite do not identify any record evidence showing they have an ownership interest in Fleetwood. The transaction documents in the record indicate the LLC is a wholly owned subsidiary of Fleetwood that acquired some assets and liabilities *from* Fleetwood, but nothing indicates it acquired any ownership interest *in* Fleetwood. Indeed, the purchase agreement with Masonite includes a list of all parties who "collectively own all of the issued and outstanding shares of common stock" of Fleetwood, and that list does not include the LLC. Masonite acquired Fleetwood's interest in the LLC, but once again nothing indicates it acquired any ownership interest in Fleetwood. And by the Agreement's terms, "affiliated with" is limited to those affiliated with Fleetwood's employee benefit and health plans, and neither the LLC nor Masonite claim they are. Thus, we are not persuaded the delegation clause clearly and unmistakably reserves for the arbitrator questions of arbitrability as to disputes between McCoy and the LLC or Masonite.

Consequently, we consider under state law the LLC and Masonite's arguments for allowing them to enforce the Agreement as nonsignatories. (*Ford Motor Warranty Cases* (2025) 17 Cal.5th 1122, 1128.)

2.

The LLC and Masonite argue they can enforce the Agreement as third-party beneficiaries. We disagree.

14

Generally, "only a party to an arbitration agreement may enforce it." (*Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 837.) A third-party beneficiary of an arbitration agreement, however, may enforce it. (*Ibid.*) A party seeking to enforce a contract as a third-party beneficiary must show that "a motivating purpose of the contracting parties was to provide a benefit to the third party." (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.) Other requirements exist, but we do not address them because the LLC and Masonite have not satisfied this one.

Although third-party beneficiaries need not be specifically named in the at-issue contract, they must show they are members of the class of persons for whose benefit the contract was made. (*Ronay*, 216 Cal.App.4th at pp. 838-839.) To make this showing, the LLC and Masonite rely on the same stretched reading of Affiliated Persons they invoke as to the delegation clause. For the reasons already stated, we are not convinced. We thus conclude neither the LLC nor Masonite is a third-party beneficiary of the Agreement, so they cannot enforce it on that basis.

3.

Next, the LLC and Masonite claim standing to enforce the Agreement as successors in interest to Fleetwood. We are not persuaded they are Fleetwood's successors in interest for purposes of the Agreement.

A purchasing company typically does not assume the seller company's liabilities "unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (*Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28.) Whether a purchasing company assumes the liabilities of

15

the seller company thus generally "depend[s] on the form and circumstances of the acquisition." (*Id.* at p. 30.)

The cases cited by the LLC and Masonite show that a successor-in-interest relationship sufficient to allow a purchasing company to enforce an arbitration agreement made between the plaintiff and an earlier company typically arises when (1) the plaintiff-employee, who brought an employment-related lawsuit, remained employed by the purchasing company and (2) the purchasing company assumed the rights and liabilities arising from the earlier company's employment relationships. In *Jenks*, for example, the plaintiff-employee remained employed after his law firm merged with the successor company, and under the applicable partnership laws the successor "acquire[d] the right to enforce the contractual rights of the prior entity." (*Jenks*, 243 Cal.App.4th at pp. 5, 13.) So when that plaintiff-employee sued the successor under his resignation agreement, the successor could enforce the arbitration agreement he entered into with the original law firm. (*Id.* at p. 12.) Likewise, in *Marenco v. DirecTV LLC* (2015) 233 Cal.App.4th 1409, the plaintiff-employee remained employed by the successor company post-merger, and record evidence showed the successor assumed "all of [the original company's] assets, employees, rights, and liabilities." (*Id.* at pp. 1418-1420.) "The record thus support[ed] a reasonable inference that the [original company] employees *who continued working after the merger* implicitly accepted [successor company's] decision to maintain their existing terms of employment, including the arbitration agreement." (*Id.* at p. 1420, italics added.) Finally, in *Ambler v. BT Americas Inc.* (N.D.Cal. 2013) 964 F.Supp.2d 1169, the plaintiff-employee continued employment through a series of company purchases and spinouts and eventually sued the last successor company for unlawful discrimination, wrongful termination, and

16

other claims. (*Id.* at p. 1172.) *Ambler* concluded the last successor company had standing to enforce the arbitration agreement made with the original company because the record suggested it "assumed the obligations, including those to its employees, which it inherited" from the earlier companies. (*Id.* at p. 1176.)

Here, the LLC and Masonite claim successor-in-interest standing to enforce the Agreement McCoy made with Fleetwood because Fleetwood "transferred its assets and liabilities" to the LLC, and the LLC "then sold its equity to Masonite." They emphasize how Fleetwood "ceased its primary business operations" following these transactions. Thus, the LLC and Masonite claim they "are both Fleetwood Inc.'s successors in interest and maintain equal standing . . . to compel McCoy's dispute to arbitration."

Unlike the plaintiffs in *Jenks*, *Marenco*, and *Ambler*, however, McCoy did not continue his Fleetwood employment with the LLC or Masonite. To the contrary, his Fleetwood employment ended over a year before the LLC and then Masonite acquired some of Fleetwood's assets and liabilities. Even though McCoy points this out, the LLC and Masonite fail to explain why their acquisition would encompass the rights and liabilities to Fleetwood's employment relationship with a *former* employee.

Nothing in the record suggests they did. Beyond citing to them generally, the LLC and Masonite do not engage with the details of the transaction documents. The document through which Fleetwood contributed some of its assets and liabilities to the LLC obligated the LLC to offer continuing employment to Fleetwood employees under the existing terms of their employment relationship, but it says nothing about the LLC assuming any rights or obligations related to *former* employees like McCoy.

17

To the extent the transaction documents reference McCoy, the evidence indicates the LLC and Masonite expressly *avoided* assuming any liability related to him. Both when contributing assets and liabilities to the LLC and when selling its equity in the LLC to Masonite, Fleetwood explicitly retained certain assets and liabilities. Those retained liabilities included "[t]he litigation with [Fleetwood's] former CEO and director, Mark McCoy," and identified the employment case and records case. It does not list this lawsuit, which arose after the transactions. Even so, we can reasonably infer from this record that neither the LLC nor Masonite assumed liability related to litigation involving McCoy or his former Fleetwood employment. Thus, they did not assume the corresponding right to enforce the Agreement against him.

4.

Finally, the LLC and Masonite contend equitable estoppel precludes McCoy from refusing to arbitrate his claims against them. We conclude equitable estoppel does not apply here.

Equitable estoppel permits a nonsignatory to enforce an arbitration agreement if "the claims the plaintiff asserts against the nonsignatory [are] dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause." (*Soltero v. Precise Distribution, Inc.* (2024) 102 Cal.App.5th 887, 893 [cleaned up].)

The LLC and Masonite argue McCoy's claims against them are "inherently intertwined with his employment relationship with and equity in Fleetwood," which they assert "fall directly" within the Agreement's scope. They also argue "the factual and legal bases for McCoy's claims against [the] LLC and Masonite are inextricably intertwined with his claims against

18

Fleetwood." But the "critical question" remains "whether the plaintiff's claims against the nonsignatory defendant[s] actually rely on the terms of the contract containing the arbitration clause." (*Soltero*, 102 Cal.App.5th at p. 895.) In our view, the claims here do not.

McCoy asserts two causes of action against the LLC and Masonite. The first is a fraudulent transfer claim based on the transfer of Fleetwood's assets to Masonite "without receiving a reasonably equivalent value in exchange." The second is an accounting claim "to determine the amount of profits [McCoy] is entitled to disgorge from [all] Defendants for entering into the [purchase agreement] without his consent." Neither cause of action appears to depend on McCoy's former employment in any way. Indeed, the complaint "does not mention or rely on any provision of [McCoy's] employment agreement with [Fleetwood] as a basis for imposing liability on" the LLC or Masonite. (*Soltero*, 102 Cal.App.5th at p. 893.)

The LLC and Masonite assert that McCoy's complaint "contains numerous allegations invoking his employment," yet the list of three examples contains only one actual reference to McCoy's employment: where McCoy claims in the complaint's factual background that "even after his unlawful termination, [McCoy] remained—and remains—a director and 12.195 percent shareholder of Fleetwood." The LLC and Masonite conclude, seemingly from this sentence, that "McCoy's allegations of Fleetwood's scheming and colluding begin with his termination from the company[,] which proves McCoy's 'allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.'" We disagree. As we read it, McCoy's claims appear to stem from his ownership interest in Fleetwood. To the extent the LLC and Masonite intend to suggest that McCoy received his equity in Fleetwood, a family-owned

19

company, as compensation under the terms of his employment, they identify no supporting record evidence. As the appellants, they cannot overcome the default presumption that the trial court's order is correct without providing an adequate record justifying reversal. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Consequently, they have not convinced us equitable estoppel applies here.

Because the LLC and Masonite have not established they have standing to enforce the Agreement, we affirm the trial court's order denying the petition to compel arbitration as to McCoy's claims against them.

D.

Our disposition results in some parties heading to arbitration while others remain in court. We asked the parties if Code of Civil Procedure section 1281.2 of the California Arbitration Act applies here, under which the trial court has discretion in such a situation to deny arbitration as to all parties to avoid the "possibility of conflicting rulings on a common issue of law or fact." The FAA, in contrast, "requires the arbitration of all claims within the scope of an arbitration provision even if the action includes nonarbitrable claims by or against third parties." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 157.) We conclude section 1281.2 does not apply here because the parties incorporated the FAA procedural rules into the Agreement.

"Although the CAA's procedural rules apply by default to cases brought in California courts, . . . the FAA's procedural rules may apply if the parties expressly agree they do." (*Quach*, 16 Cal.5th at p. 582.) Such is the case here.

The Agreement dictates "that questions concerning the enforceability of this Agreement shall be decided by the arbitrator pursuant to the Federal Arbitration Act." Where, as here, "an agreement provides that its

20

'enforcement' shall be governed by the FAA," such language "incorporate[s] the procedural provisions of the FAA into the [a]greement." (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 342, 346.)

To avoid this result, McCoy likens the Agreement's language to that in *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12, but it is distinguishable. There, the contract directed any arbitration to be "'governed by'" the FAA but allowed the arbitrator's decision to be "'entered and enforced as a final judgment in any court of competent jurisdiction'" *without* specifying what rules would apply to such enforcement proceedings. (*Id.* at p. 1341, fn. 3.) Because the parties (1) "did not specify [in the contract] whether enforcement proceedings were to be brought in state or federal court" and (2) had "proceeded on the theory that the CAA was controlling" before the trial and intermediate appellate courts, the Supreme Court determined state law governed the enforcement proceeding. (*Id.* at p. 1350, fn. 12.) Here, however, the parties specified that the FAA controls matters of enforcement. Thus, CAA procedures like section 1281.2 do not apply. Consequently, our remand will not direct the trial court to consider the options available under section 1281.2.

Given our disposition, we do not need to address any remaining arguments the parties raise, including those about the scope of the Agreement and the trial court's evidentiary rulings.

### III.

We reverse the order denying the petitions to compel arbitration as to Fleetwood Aluminum Products, Inc. and the Directors (Janice McCoy, Mica Gumbleton, Mara McCoy Cartier, and Michele Davis) but affirm it as to Fleetwood Aluminum Products, LLC and Masonite Corporation. The matter is remanded to the trial court with instructions to submit the claims against

21

Fleetwood Aluminum Products, Inc. and the Directors to arbitration. The Directors are entitled to recover their appellate costs from Mark McCoy. All other parties are to bear their own appellate costs.

CASTILLO, J.

WE CONCUR:

BUCHANAN, Acting P. J.

RUBIN, J.